**FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MEDPOINTE HEALTHCARE INC., | : | |
| | : | CIVIL ACTION NO. 03-5550 (MLC) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| HI-TECH PHARMACAL CO., INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| MEDPOINTE HEALTHCARE INC., | : | |
| | : | CIVIL ACTION NO. 04-1686 (MLC) |
| Plaintiff, | : | |
| | : | |
| v. | : | MEMORANDUM OPINION |
| | : | |
| MORTON GROVE PHARMACEUTICALS, INC., | : | |
| | : | |
| Defendant. | : | |

APPEARANCES:

Thomas R. Curtin, Esquire
Graham, Curtin & Sheridan, PC
4 Headquarters Plaza
P.O. Box 1991
Morristown, NJ 07962-1991
(973) 292-1700
**Attorney for Plaintiff**

Russell Faegenburg, Esquire
Paul Kochanski, Esquire
Lerner, David, Littenberg, Krumholz & Mentlik
600 South Avenue West
Westfield, NJ 07090
(908) 518-6367
**Attorneys for Defendant, Hi-Tech Pharmacal Co., Inc.**

Sandra Bresnick, Esquire
Weil, Gotshal & Manges
767 Fifth Avenue
New York, NY 10153
(212) 310-8007
**Attorney for Plaintiff**

Sanjay P. Ibrahim, Esquire
Duane Morris
744 Broad Street, Suite 1200
Newark, NJ 07102
(973) 424-2069
**Attorney for Defendant Morton Grove Pharmaceuticals, Inc.**

Benjamin Leace, Esquire
Rex Donnelly, Esquire
Phillip Gonzalez, Esquire
RatnerPrestia, PC
P.O. Box 980
Valley Forge, PA 19482
(610) 407-0700
**Attorneys for Defendant Morton Grove Pharmaceuticals, Inc.**

**HUGHES, U.S.M.J**

This matter comes before the Court upon Motions by Defendants, Hi-Tech Pharmacal Co., Inc. and Morton Grove Pharmaceuticals, Inc., for leave to file Amended Answers and Counterclaims [Docket entry #64 (Hi-Tech Pharmacal Co., Inc.), Docket entry #34 (Morton Grove Pharmaceuticals, Inc.)], returnable June 6, 2005.  Defendants seek to allege the same substantive claims against Plaintiff MedPointe Healthcare Inc. but assert additional facts as bases for those claims.  Specifically, as part of these new "facts," Defendants seek to equate an alleged failure to inform the Court of a prior court decision in a separate case with "patent misuse" in this case.  Plaintiff MedPointe Healthcare, Inc. has submitted opposition to that part of the motion but does not oppose certain other parts.  The Defendants have submitted a joint reply.  The Court has reviewed the papers submitted by the parties and conducted oral argument on June 6, 2005.  For the reasons stated, Defendants' Motions to file Amended Answers and Counterclaims are granted

in part and denied in part.

I. **PROCEDURAL BACKGROUND AND HISTORY**

   A. **The '206 Patent**

In November 2003, MedPointe Healthcare Inc. ("MedPointe" or "Plaintiff") filed a patent infringement suit against Hi-Tech Pharmacal Co., Inc. ("Hi-Tech") for willful infringement of United States Patent No. 6,417,206 ("the '206 patent"), the patent currently before the court. In December 2003, the Court conducted a three day evidentiary hearing to determine whether a preliminary injunction should be granted against Hi-Tech regarding the '206 patent. Subsequently, in March 2004, the Court entered a preliminary injunction [Docket Entry # 26]. In November 2004, the Federal Circuit Court of Appeals vacated the preliminary injunction, finding that the trial court failed to recognize that Hi-Tech had cast enough doubt on the validity of the '206 patent with its obviousness defense. *MedPointe Healthcare Inc. v. Hi-Tech Pharmacal Co., Inc.*, 115 Fed. Appx. 76 (3d Cir. 2004).

In April 2004, MedPointe filed a separate action against Morton Grove Pharmaceuticals, Inc. ("Morton Grove") for infringement of the '206 patent. In February 2005, Hi-Tech and Morton Grove's ("Defendants") cases were consolidated for discovery and case management purposes. [Docket entry #59 (Hi-Tech Pharmacal Co., Inc.), Docket entry #26 (Morton Grove Pharmaceuticals, Inc.)].

   B. **The '597 Patent**

In September 2001, prior to MedPointe's filing of the '206 patent, MedPointe's predecessor, Carter-Wallace, filed an application with the U.S. Patent Office for U.S. Patent No.

6,287,597 ("the '597 patent"), a separate patent. Subsequent to its acquisition of the '597 patent, MedPointe sued Morton Grove for alleged infringement of the '597 patent and moved for a preliminary injunction. In February 2002, the Court denied MedPointe's motion, finding that Morton Grove met its burden of raising a substantial question of invalidity on grounds of obviousness. *See MedPointe v. Morton Grove,* No. 01-5190 (D.N.J. 2002). Following the February 2002 hearing, the Court issued a March 2003 sealed written opinion. The opinion was subsequently unsealed in June 2004. Hi-Tech was not a party in this separate action.

The prior ruling on the '597 patent concerns a different product from that addressed by the '206 patent. Specifically, the '597 patent addresses a "two-component antihistamine/decongestant formulations, [while] the '206 patent", the patent here, "addresses three-component antitussive/antihistamine/decongestant formulations." Pl.['s] Br. at 4. Not only are they different products, with different compositions and different inventors, but also, the judges, attorneys, and presentations of evidence and argument, are different as well. Finally, it is uncontested that there are two separate patents and two separate court proceedings.

  **C. Defendants' Motions to Amend Answers and Counterclaims**

Hi-Tech and Morton Grove seek to amend their Answers and Counterclaims to assert, *inter alia*, both the allegations of patent misuse and the defense of "unclean hands" which had been previously asserted, but not on the same factual grounds. *See* Hi-Tech's Am. Answer and Countercl. and Morton Grove's Am. Answer and Countercl. The Defendants base the new claim and defense, found in paragraphs 77-80 of Hi-Tech's Amended Answer and Counterclaim and paragraphs 91-95 of Morton Grove's Amended Answer and Counterclaim, on MedPointe's alleged purposeful non-disclosure of the preliminary injunction hearing for the '597 patent.

Defs.['] Joint Reply Br. at 10-11.  Specifically, paragraphs 77-80 of Hi-Tech's Amended Answer and Counterclaim state:

> 77. During the preliminary injunction proceedings in this action, MedPointe did not disclose Judge Lifland's oral ruling rendered in connection with preliminary injunction proceedings on the '597 patent.  As explained previously, that oral ruling was material to the patentability of the claims of the '206 patent.
>
> 78. MedPointe also failed to disclose during the preliminary injunction proceedings in this case the subsequent written opinion of Judge Lifland issued on March 27, 2003, which confirmed Judge Lifland's earlier conclusions regarding the obviousness of the claims of the '597 patent.  In that written opinion, Judge Lifland concluded that one skilled in the art would recognize that pyrilamine and chlorpheniramine are obvious variants of one another, and that it would have been obvious to select pyrilamine as a replacement for chlorpheniramine.  Given that one of Hi-Tech's arguments in opposing a preliminary injunction was that it would have been obvious to substitute pyrilamine tannate for chlorpheniramine tannate, and phenylephrine tannate in the prior art Tussi-12 product (which contained carbetapentane tannate, chlorpheniramine tannate, and phenylephrine tannate), to render the claims of the '206 patent obvious, Judge Lifland's conclusions regarding the obviousness of selecting pyrilamine as a replacement for chlorpheniramine were highly pertinent to a consideration of the issues.  On information and belief, MedPointe's attorneys knew of that written opinion during the preliminary injunction proceedings in this action.  The opinion, which represented the views of another judge within the same district, should have been disclosed to the Court during the preliminary injunction proceedings.
>
> 79. Judge Lifland's conclusion in the written opinion that it would have been obvious to replace the non-tannate salt forms of the Allergine reference with tannate forms was also highly material to the preliminary injunction proceedings in this case.  During those proceedings, Hi-Tech argued that it would have been obvious to modify the

> Candettes reference to replace the non-tannate salt forms with the tannate salt forms. Judge Lifland's conclusion in connection with the prior preliminary injunction proceedings that replacing non-tannate forms of active bases with the respective tannate forms would have been obvious demonstrated that it was obvious to modify Candettes to render the claims of the '206 patent obvious. On information and belief, MedPointe's attorneys were aware of this portion of Judge Lifland's written opinion. Accordingly, MedPointe should have disclosed this portion of the opinion during the preliminary injunction proceedings in this case.
>
> 80.   MedPointe's failure to disclose both the oral and the written opinion to this Court constitutes unclean hands.

Hi-Tech's Am. Answer and Countercl. ¶¶ 77-80 (*citations omitted*) (Morton Grove adopts these same paragraphs, which are designated as ¶¶ 91-95 in Morton Grove's Am. Answer and Countercl.).  Both Defendants argue that the Lifland Court's conclusion regarding the obviousness of the '597 patent is highly pertinent to an "obviousness defense" consideration in its '206 patent litigation and that the non-disclosure caused a substantial impediment to market entry.  Defs.['] Joint Reply Br. at 12.  Defendants seek to add other facts which are not controversial.

      D.     **MedPointe's Opposition**

The Defendants' asserted claim of patent misuse and "unclean hands," found in paragraphs 77-80 in Section E of Hi-Tech's proposed Amended Answer and Counterclaim and paragraphs 91-95 in Section VI of Morton Grove's proposed Amended Answer and Counterclaim, are the only amendments opposed by Plaintiff.  Pl.['s] Br at 1.  The rest of Hi-Tech's Amended Pleadings, containing Sections A-D and the rest of Section E, are unopposed by Plaintiff and they include:

"A. MedPointe Failed to Disclose Material Information To The U.S. Patent and Trademark Office From a Prior Preliminary Injunction Motion/Hearing Which It Lost";
"B. MedPointe Failed To Disclose The Substance Of The Prosecution Of The '618 Application To The Examiner Of The '206 Patent";
"C. MedPointe Has Engaged In A Pattern Of Inequitable Conduct";
"D. The '206 Patent Does Not List The Proper Inventors."

*See* Hi-Tech's Am. Answer and Countercl.

In opposition to the controversial claim and defense, MedPointe argues that Defendants' allegations are both "wrong as a matter of fact and irrelevant as a matter of law." Pl.['s] Br at 6. Additionally, MedPointe argues that the allegations are both "scandalous and futile." *Id.* It is Plaintiff's position that "the preliminary rulings [of the '597 patent] are not binding precedent and do not concern the '206 patent," the subject of the instant matter. *Id.* MedPointe asserts that the '597 patent ruling dealt with a completely different product, one with different inventors, and covers different compositions. *Id.* at 4. Finally, MedPointe contends that even if the allegation of "unclean hands" is true, it does not constitute patent misuse. *Id.* at 10.

## II. DISCUSSION AND ANALYSIS

### A. Motion to Amend and Futility

The determination of a motion to amend falls within the discretion of the trial court and is governed by Fed. R. Civ. P. 15(a). *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Rule 15(a) provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In *Foman*, the Supreme Court articulated this standard, stating:

> In the absence of any apparent or declared reason – such as undue

> delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'

371 U.S. at 182.

As noted in *Foman*, leave to amend may be denied if the amendment would be futile. *Id.*; *see Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000) (*citing Smith v. NCAA*, 139 F.3d 180, 190 (3d Cir. 1998), rev'd on other grounds, 525 U.S. 459 (1999)). Accordingly, the Third Circuit has noted that "an amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002); *Alvin*, 227 F.3d at 121; *see also Warner-Lambert Co. v. Teva Pharm., Inc.*, 289 F. Supp. 2d 515, 544-45 (D.N.J. 2003) (denying defendant's motion for leave to amend its answer to add an additional inequitable conduct defense as futile because plaintiff "would be entitled to summary judgment in its favor on the defense"); *Med. Graphics Corp. v. Hartford Fire Ins. Co.*, 171 F.R.D. 254, 257 (D. Minn. 1997) (noting that " leave to amend an [a]nswer should be denied if the proposed defenses are legally insufficient ... so as to invite a motion to strike under Rule 12(f)") .

In assessing the "futility" of an amendment, the Court "applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Specifically, in considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them." *Brown v. Phillip Morris Inc.*, 250 F.3d 789, 796 (3d Cir. 2001) (*citing Moore v. Tartler*, 986 F.2d 682, 685 (3d

Cir. 1993)).  Accordingly, the complaint may be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id*. (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

In the present matter, Defendants' motions seek to amend their Answers and Counterclaims to allege that Plaintiff's non-disclosure of the prior ruling on the '597 patent during the preliminary injunction hearing for the '206 patent constitutes patent misuse and "unclean hands" in this present '206 patent litigation.  Hi-Tech's Am. Answer and Countercl. § E and Morton Grove's Am. Answer and Countercl. § VI.  Although Hi-Tech contends that its Amended Answer and Counterclaim "asserts [the] same defenses [as in its original Answer and Counterclaim], and simply elaborates on them," the Court notes that Hi-Tech's original Answer and Counterclaim alleged only, as inequitable conduct, that "additional references ... material to the prosecution of the '206 patent ... [were not brought] to the attention of the Patent Office," while its amended pleading alleges non-disclosure before the Court." *Hi-Tech's Notice of Motion to File Amended Answer and Counterclaim*.  Initially, the Court finds that the allegations in Hi-Tech's amended pleadings are significantly different and are, clearly, not simple elaborations of their previous allegations.

    **B.**    **Unclean Hands/Patent Misuse and Unenforcibility of the Patent**

The maxim of unclean hands mandates that "he who comes into equity must come with clean hands." *Precision Inst. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945).  Specifically, " [the plaintiff] must be frank and fair with the court, nothing about the case under consideration should be guarded, but everything that tends to a full and fair determination of the matters in controversy should be placed before the court." *Keystone Driller Co. v. Gen.*

9

*Escavator Co.*, 290 U.S. 240, 244 (1933) (*quoting Story's Equity Jurisprudence*, 14th ed., §98).

As the Supreme Court noted in *Keystone*, however, the maxim of unclean hands is applied only where plaintiff's unconscionable act "has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *Id.* at 245. In *Keystone*, the Supreme Court affirmed the lower court's decision of dismissing plaintiff's patent infringement litigation against defendant, ruling that all five patents-in-suit were unenforceable due to unclean hands. *Id.* at 246. Because the plaintiff inequitably obtained a decree of validity on one patent by suppressing prior use of the invention and used the decree of validity there obtained in enforcing all the other patents in the case, and because the devices covered by the five patents were "important, if not essential, parts of the same machine," the Court found that "plaintiff did not come with clean hands in respect of any cause of action in these cases." *Id.*

In applying the unclean hands doctrine, the Third Circuit "[has] generally been clear that the connection between the misconduct and the claim must be close." *In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999). For example, in *Monsanto v. Rohm & Haas*, the Third Circuit upheld a judgment declaring plaintiff's patent invalid and unenforceable because plaintiff's patent infringement claim directly depended upon its concealment and non-disclosure during its application for the same patent, thereby satisfying the requirement of an essential relationship for the application of the unclean hands doctrine. *Id.; see Monsanto v. Rohm & Haas Co.*, 456 F.2d 592, 601 (3d Cir. 1972), cert. denied, 407 U.S. 934 (1972).

On the other hand, where the Third Circuit "has not applied unclean hands, the misconduct alleged has not been directly related to the subject of the plaintiff's suit." *In re New Valley Corp.*, 181 F.3d at 525. In *Ciba-Geigy Corp. v. Bolar Pharmaceutical Company, Inc.*, for

example, the Third Circuit affirmed the district court's grant of a permanent injunction in favor of plaintiff despite allegations of plaintiff's unclean hands "because evidence that plaintiff had mislabelled drugs, sold adulterated batches of drugs and violated FDA regulations was insufficient to warrant application of unclean hands, as [the alleged wrongdoings] did not involve nor relate to the matter of [plaintiff's] claim" against competitor defendant. *Id., see Ciba-Geigy Corp. v. Bolar Pharmaceutical Co.*, 747 F.2d 844, 855 (3d Cir. 1984), cert. denied, 471 U.S. 1137 (1985).

The Federal Circuit has applied the unclean hands doctrine to render unenforceable other patents-in-suit when there was inequitable conduct in the procurement of one patent-in-suit. *Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 810-812. (Fed. Cir. 1990). There, the Federal Circuit affirmed the district court's ruling that plaintiff's intentional failure to disclose prior art and intentional concealment of the best mode and disclosure of a fictitious inoperable mode during the prosecution of the application for the '917 patent so soiled [plaintiff's] hands as to render the '081, '212 and '303 patents equally unenforceable." *Id.* at 807-812. Although the "'917 [patent] had a different inventive entity from that listed for" the other patents, the Federal Circuit found a "significant relationship between and among" the patents in that the '081 patent represented the results of tests conducted with the same material whose identity was concealed in the '917 patent application, while the "'212 and '303 applications were continuations in part of the '081 patent application." *Id.* at 809-812, n6. Moreover, the concealment of the material's identity from the '917 patent enabled the plaintiff to successfully prosecute the applications that became the other patents-in-suit. *Id.* at 811.

It is instructive to note that, although litigation misconduct may serve "as a basis to

11

dismiss the wrongful litigant, [it] does not infect, or even affect, the original grant of the property right." *Aptix Corp. v. Quickturn Design Sys. Inc.*, 269 F.3d 1369, 1375 (Fed. Cir. 2001). In *Aptix*, the Federal Circuit affirmed the dismissal of the patent infringement action on the basis of unclean hands when the plaintiff produced a fabricated notebook at discovery, but vacated the district court's judgment of declaring the patent unenforceable. *Id.* at 1375-1376. The Court stressed that

> "[t]he doctrine of unclean hands does not reach out to extinguish a property right based on misconduct during litigation to enforce the right. Indeed neither the Supreme Court nor this court has ever declared a patent unenforceable due to litigation misbehavior."

*Id.* at 1375. In reaching its conclusion of leaving the patent right intact, the Court distinguished between litigation misconduct, which may result in "unclean hands" and thereby denying relief to the litigant in his present suit, from "inequitable conduct" in the acquisition of the patent itself, thereby tainting the property right *ab initio* and rendering the patent unenforceable. *Id.* at 1375-1376; *see also Consol. Aluminum Corp.*, 910 F.2d at 812 (clarifying that the term "inequitable conduct is no more than the unclean hands doctrine applied to particular conduct before the PTO"); *Competitive Tech. v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1160 (2003) (ruling that defendant's affirmative defense of inequitable conduct involving alleged misconduct against the alleged infringer only, absent any allegations of misconduct before the PTO, are legally insufficient to declare the patents unenforceable).

"The doctrine of patent misuse is 'an extension of the equitable doctrine of unclean hands' to the patent field." *Hoffman-La Roche, Inc. v. Genpharm Inc.*, 50 F. Supp. 2d 367 (D.N.J. 1999) (*quoting United States Gypsum Co. v. National Gypsum Co.*, 352 U.S. 457, 465

(1957)). Patent misuse is a recognized affirmative defense and "relates generally to the use of patent rights to obtain or coerce an unfair commercial advantage." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998). Under this doctrine, "if the patentee attempts to extend that monopoly beyond the scope of the patent, to use the patent as a tool to restrain trade in areas not claimed under the patent, the patentee may lose her right to seek redress through the judicial process to protect her lawful patent monopoly." *Hoffman-La Roche, Inc.*, 50 F. Supp. 2d at 378. An allegation of patent misuse requires "that the alleged infringer show that the patentee has impermissibly broadened the 'physical or temporal scope' of the patent grant with anticompetitive effect." *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 868 (Fed. Cir. 1997). As noted by the Federal Circuit, "classic grounds of patent misuse [may include such trade practices] as tying or enforced package licensing or price restraints or extended royalty terms." *C.R. Bard,* 157 F.3d at 1378. An alleged practice that is not *per se* patent misuse may still constitute misuse "if a court determines that such practices do not reasonably relate to the subject matter within the scope of the patent claims." *Bayer AG v. Housey Pharmaceuticals, Inc.* 169 F. Supp. 2d 328 (D. Del. 2001).

Here, Defendants allege that Plaintiff's non-disclosure of the prior ruling on the '597 patent during the preliminary injunction hearings on the present '206 patent litigation renders the '206 patent unenforceable due to patent misuse or unclean hands. However, the Court notes that the prior ruling on the '597 patent concerns a product different from that addressed by the '206 patent in this litigation. Specifically, the '597 patent addresses "two-component antihistamine/decongestant formulations, [while] the '206 patent addresses three-component antitussive/antihistamine/decongestant formulations." Pl.['s] Br. at 4. Although Defendants

13

assert that "Judge Lifland's endorsement of the very two theories on which Hi-Tech relied to demonstrate obviousness of the '206 patent claims–that it was obvious to replace chlorpheniramine with pyrilamine in Tussi-12 and obvious to replace non-tannate salt forms of active ingredients in Candettes with their tannate forms–was indeed highly material to the preliminary injunction proceedings," the Court notes that Judge Lifland's endorsement of the ingredient substitutions does not necessarily require disclosure since the products themselves are different. *See* Defs.['] Joint Reply Br. at 6. Furthermore, the '597 patent ruling resulted from trial proceedings involving a case different from that involved in the preliminary injunction hearings in the present litigation. Not only do the '597 and '206 patents involve different products, with different compositions and different inventors, but the judges, attorneys, and presentation of evidence, are different, as well. Moreover, knowledge of the prior '597 ruling does not bind the judge in the '206 litigation to rule the same. Accordingly, the Court finds that Plaintiff's alleged misconduct does not constitute unclean hands nor patent misuse because the misconduct, even if true, does not directly concern the present '206 patent.

Like the defendant's alleged misconduct in *Ciba Geigy,* which was found not to constitute unclean hands because it was unrelated to the plaintiff's claim, the Court finds that, here, MedPointe's alleged misconduct is also unrelated to the present litigation because the alleged misconduct, at best, involves a failure to disclose a prior ruling on the '597 patent, and not on the '206 patent actually involved in this case. *See Ciba-Geigy Corp. v. Bolar Pharmaceutical Co., Inc.*, 747 F.2d at 855. As discussed previously, the Court finds that the '597 patent concerns a product different from that addressed by the '206 patent; specifically, the '597 patent addresses "two-component antihistamine/decongestant formulations, [while] the '206

14

patent addresses three-component antitussive/antihistamine/decongestant formulations." Pl.['s] Br. at 4.  Although Defendants assert that "Judge Lifland's endorsement of the very two theories on which Hi-Tech relied to demonstrate obviousness of the '206 patent claims–that it was obvious to replace chlorpheniramine with pyrilamine in Tussi-12 and obvious to replace non-tannate salt forms of active ingredients in Candettes with their tannate forms–was indeed highly material to the preliminary injunction proceedings," the Court notes that Judge Lifland's apparent endorsement of the ingredient substitutions does not automatically require disclosure here, since the products themselves are different.  See Defs.['] Joint Reply Br. at 6.  Furthermore, unlike Monsanto where the essential relationship for application of the unclean hands doctrine was found because plaintiff's misrepresentations involved the same patent, the Court finds that, here, the patents involved were two distinct patents, the '597 and '206 patents, with different inventors and different compositions.  *See Monsanto v. Rohm & Haas Co.*, 456 F.2d at 601.

     Defendants assert in their Joint Reply Brief that, as the Court held in *Consolidated Aluminum Corporation*., inequitable conduct in one patent may deem other patents unenforceable.  *See Consol. Aluminum Corp.*, 910 F.2d at 810-812.  However, the Court notes that, unlike *Consol. Aluminum Corp.* wherein the inequitable conduct occurred during the <u>procurement</u> of the related patent before the patent office, here, the alleged misconduct occurred during litigation before the court involving two separate cases.  *Id.*  For the same reason, the Court also finds the present matter different from *Keystone* wherein the alleged non-disclosure occurred before the patent office during the prosecution of one patent found related to the other patents in the same suit.  *See Keystone Driller Co.*,  290 U.S. at 245.  Importantly, neither party provided, nor is the Court aware of, any precedent which would permit a finding of unclean

hands where there was a failure to disclose a decision involving a different patent.

Furthermore, as discussed earlier, unlike *Consol. Aluminum Corp.* and *Keystone,* where the patents involved in the misconduct were found to be related to the other patents in suit, the Court here finds that the subject of the alleged misconduct, the '597 patent, is unrelated to the '206 patent in the present litigation, as the ('597 and '206) patents are different products with different compositions. *See Consol. Aluminum Corp.*, 910 F.2d at 807-812; *Keystone Driller Co.*, 290 U.S. at 245.

At first blush, Defendants' argument that the compounds of the two patents appear to be the same has some appeal. However, one patent addresses two-component formulations, while the other addresses three-component formulations. Although Defendants assert that "Judge Lifland's endorsement of the very two theories on which Hi-Tech relied to demonstrate obviousness of the '206 patent claims–that it was obvious to replace chlorpheniramine with pyrilamine in Tussi-12 and obvious to replace non-tannate salt forms of active ingredients in Candettes with their tannate forms–was indeed highly material to the preliminary injunction proceedings," the Court notes that Judge Lifland's endorsement of the ingredient substitutions does not necessarily require disclosure since the products themselves are different. *See* Defs.['] Joint Reply Br. at 6. Furthermore, the two patent cases have different (1) patents, (2) lawyers, (3) nature of proceedings, and (4) presentation of evidence and argument.

In addition, unlike *Aptix,* wherein plaintiff's falsification, during discovery, of the notebook on the same patent was found to provide the basis for unclean hands, here, the Court finds that Plaintiff's alleged misconduct, even if true, does not rise to the same level of misconduct which would invoke the unclean hands doctrine. *See Aptix Corp.*, 269 F.3d at 1375-

16

1376. In the Court's view, it is debatable whether Plaintiff's counsel, even if he had known about the prior ruling on the '597 patent, would have an obligation requiring them to disclose it. Furthermore, following the analysis put forth in *Aptix*, because the alleged misconduct involved conduct before the court and not before the patent office during the procurement of the patent, it does not taint the property right *ab initio* to render the patent unenforceable. The Court notes, however, that it only addresses patent unenforceability as potentially caused by the alleged non-disclosure before the court. Hi-Tech's allegation of patent unenforcibility due to alleged non-representations to the patent office are outside the scope of this ruling. *See* Hi-Tech's Answer and Countercl. at 5, ¶ 5.

With regard to Defendants' allegations of patent misuse, the Court finds that Plaintiff's alleged misconduct does not constitute patent misuse because it did not broaden the patent's "physical or temporal scope." *See Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d at 868. The Court further finds that MedPointe's alleged misconduct of non-disclosure before the court is dissimilar to the trade practices previously recognized by the courts as constituting patent misuse. Accordingly, the Court finds that, as discussed in *Hoffman-La Roche, Inc.*, MedPointe's conduct during the litigation was not an attempt "to use the patent as a a tool to restrain trade in areas not claimed under the patent." *See Hoffman-La Roche, Inc.*, 50 F. Supp. 2d at 378. Lastly, neither party provided, nor is the Court aware of, any precedent which recognizes litigation misconduct as constituting patent misuse.

Finally, it is important to note that the bulk of the alleged "facts" in paragraphs 77-80 of Hi-Tech's Amended Pleadings and paragraphs 91-95 of Morton Grove's Amended Pleadings are based on "information and belief" and amount to little more than pure speculation as to what

communications transpired, or not, between client and attorney, or between attorneys in different cases. Nevertheless, permitting such "facts" in an amended pleading would be futile because, even if proven, they could not form the basis for patent misuse or unclean hands. Accordingly, that portion of the motion will be denied.

    **C.**    **Candor Towards the Court**

It is critical that this opinion not be read in any way so as to diminish the lawyer's and the litigant's duty of complete candor with the Court in all matters. This opinion only stands for the proposition that any failure in this case to disclose prior court decisions cannot be transformed into a private cause of action or defense of patent misuse. It is the Court's strong view that candor with the court is best ensured by judicial diligence and attorney professionalism rather than by pleadings in litigation.

The Rules of Professional Conduct mandate that a lawyer shall not knowingly "fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be *directly adverse* to the position of the client and not disclosed by opposing counsel" or "fail to disclose to the tribunal a *material fact* knowing that the omission is reasonably certain to mislead the tribunal ...." R.P.C. ¶ 3.03 (emphasis added).

In the present litigation, the Court notes that the parties' briefs present both a factual dispute and a legal analysis, namely, (1) whether Judge Lifland's prior ruling on the '597 patent was known and (2) if so, should it have been disclosed by Plaintiff during the preliminary injunction hearings on the '206 patent. Hi-Tech alleges in its Amended Answer and Counterclaim that "Medpointe's attorneys knew of that written opinion" or "were aware of this

portion of Judge Lifland's written opinion." *See* Hi-Tech's Am. Answer and Countercl., ¶¶ 78-79. Furthermore, in Defendants' Joint Reply Brief, they assert that

> "even if MedPointe's *trial attorneys* in the '206 action were unaware of Judge Lifland's opinions, MedPointe can hardly deny that *the company itself*, its general counsel (who attended the prior hearing before Judge Lifland) and its patent counsel (who tried the case before Judge Lifland and prosecuted the '206 patent) were aware of Judge Lifland's opinions issued against MedPointe."

Defs.['] Joint Reply Br. at 9. During oral argument, however, Defendants were careful not to allege that MedPointe's trial attorneys litigating the present '206 patent case knew of the prior ruling on the '597 patent.

In any event, counsel's conduct is governed by the Rules of Professional Responsibility which require a duty of candor before the court. Nonetheless, it is debatable (and reasonable minds may differ on this) whether the Rules of Professional Conduct go so far as to require counsel to disclose information on a patent that is clearly different from the patent in the present litigation. The Court finds that whether MedPointe's trial counsel (for the '206 patent litigation) knew, should have known, or should have disclosed the ruling on the different '597 patent can be transformed into patent misuse or unclean hands.

Finally, the Court finds that whether MedPointe itself knew of the prior ruling on the '597 patent does not justify patent misuse or unclean hands during litigation. The Court cannot expect the litigant, when represented by trial counsel, to be responsible for making determinations as to the relevancy of a decision in a past case to present litigation and, consequently, have an obligation to disclose it to the instant court. Accordingly, the Court finds that Defendants' proposed Amended Pleadings, with respect to non-disclosure of the prior ruling on the '597

19

patent, fail to state a claim for patent misuse or unclean hands and are, therefore, the motion is denied.

### III.     CONCLUSION

For the reasons herein, Defendants' Motions for leave to file Amended Answers and Counterclaims are granted in part and denied in part. Specifically, the Court finds that paragraphs 77-80 of Hi-Tech's Amended Pleadings and paragraphs 91-95 of Morton Grove's Amended Pleadings, with respect to non-disclosure of the prior ruling on the '597 patent, fail to state a claim for patent misuse or unclean hands because the '597 patent concerns a product different from that addressed by the '206 patent in the present litigation. Therefore, Defendants' allegations of patent misuse and unclean hands for non-disclosure of the prior ruling on the '597 patent are futile and that part of the motion is denied. Lastly, the remaining part of defendants' motions for leave to amend, i.e., sections A-D and the rest of Section E of Hi-Tech's Amended Pleadings, are unopposed and, therefore, that part of the motions will be granted.

An appropriate Order accompanies this Memorandum Opinion.

 Dated: August 4, 2005