UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **MEDPOINTE HEALTHCARE INC.,** | : | Civil Action No. 03-5550 (MLC) |
| Plaintiff, | : | |
| v. | : | |
| **HI-TECH PHARMACAL CO., INC.,** | : | |
| Defendant. | : | |
| **MEDPOINTE HEALTHCARE INC.,** | : | Civil Action No. 04-1686 (MLC) |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM OPINION** |
| **MORTON GROVE PHARMACEUTICALS, INC.,** | : | |
| Defendant. | : | |

**HUGHES, U.S.M.J.**

This matter is before the Court upon the Motion of Defendant Hi-Tech Pharmacal Co., Inc., ("Hi-Tech"), for Consolidated Trial on Liability of Civil Action 03-5550 and 04-1686 Pursuant to FED. R. CIV. P. 42(a) and to Bifurcate Trials on Damages and Alleged Willfulness of Infringement Pursuant to FED. R. CIV. P. 42(b).  Defendant Morton Grove ("Morton Grove") joined Hi-Tech's Motion to consolidate and bifurcate on July 24, 2006.  Plaintiff Medpointe Healthcare Inc. ("Plaintiff") opposes the Motion.  Both parties requested that the Court defer argument on this motion until the pending summary judgment motions were decided.

Plaintiff filed two separate actions for patent infringement.  The first action was filed against Hi-Tech on November 25, 2003, and the second action was filed against Morton Grove

on April 13, 2004.  The two actions, which claim that Hi-Tech and Morton Grove have infringed the same patent, have been consolidated for discovery and case management purposes only.  Defendants Hi-Tech and Morton Grove now seek to consolidate the two actions solely for a trial on liability issues and to hold separate trials on the issues of damages and alleged willful infringement.  The Court reviewed the written submissions of the parties and conducted oral argument on January 22, 2007.  For the reasons that follow, Hi-Tech's and Morton Grove's Motion for a Consolidated Trial on Liability and to Bifurcate Trials on Damages and Alleged Willfulness of Infringement is granted.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

A.  *Medpointe v. Hi-Tech*

Plaintiff MedPointe is a New Jersey corporation headquartered in Somerset, New Jersey that develops, markets and sells branded prescription pharmaceuticals.  (Edick Hi-Tech Decl. ¶ 3).  Plaintiff is the owner-assignee of the '206 Patent, issued on July 9, 2002, which is directed to a certain combination of pharmaceuticals to be administered for the symptomatic relief of cough.  (See Dkt. no. 03-5550, entry no. 1).  Plaintiff sells its prescription anti-cough medication under the trade name Tussi-12D.  Id.

Hi-Tech is a competitor of Plaintiff and has manufactured and distributed a generic suspension, which has the same component actives in the same dosage amounts as Tussi-12D.  (See Seltzer Tr. at 8-26).   On November 25, 2003, Plaintiff filed suit against Hi-Tech, accusing Hi-Tech of willful infringement of U.S. Patent No. 6,417,206 ("the '206 Patent").  (See Dkt. no. 03-5550, entry no. 1).  Plaintiff, who possesses exclusive rights to the '206 Patent, brought this action to stop Hi-Tech from marketing in the United States generic copies of the prescription

anti-cough medication Tussi-12D.  Id.

In December 2003, Plaintiff sought, and this Court granted, a temporary restraining order and a preliminary injunction.  (See Dkt. no. 03-5550, entry no. 2, 6, 25, 26).  Hi-Tech appealed this decision, and in December 2004, the injunction was vacated by the Federal Circuit based on Hi-Tech having raised a substantial question of invalidity based upon obviousness.  Medpointe Healthcare Inc. v. Hi-Tech Pharmacal Co., 115 F. Appx. 76 (Fed. Cir. 2004).

On June 13, 2006, Hi-Tech filed a motion for summary judgment.  (See Dkt. no. 03-5550, entry no. 87).  Also on June 13, 2006, Medpointe filed two motions for summary judgment: (1) Motion for Summary Judgment of No Patent Misuse and No Unclean Hands; and (2) Motion for Summary Judgment of No Inequitable Conduct.  (See Dkt. no. 03-5550, entry no. 88 and 89).  Oral argument on the motions for summary judgment were heard by Judge Mary L. Cooper on November 30, 2006.  (See Dkt. no. 03-5550, entry no. 119).  On December 21, 2006, Judge Cooper entered a Memorandum Opinion and Order denying Hi-Tech's motion for summary judgment and withdrawing as moot Medpointe's two motions for summary judgment.  (See Dkt. no. 03-5550, entry no. 120 and 121).

**B.**     *Medpointe v. Morton Grove*

Morton Grove is a Delaware corporation and a competitor of Plaintiff.  (See Dkt. no. 04-1686, entry no. 1).  On April 13, 2004, Plaintiff filed an action against Morton Grove as defendant, accusing it of willful infringement of the '206 Patent and seeking to prevent Morton Grove from marketing a generic version of Tussi-12D.  (See Dkt. no. 04-1686, entry no. 1).  The two actions were consolidated for discovery and other pretrial proceedings only on February 22, 2005.  (Pl.'s Opp. Br. at 1).  At this stage in the litigation, discovery has ended and the cases are

prepared for trial.  (Hi-Tech Br. at 3; Pl.'s Opp. Br. at 1).

On June 13, 2006, Medpointe filed two motions for summary judgment: (1) Motion for Summary Judgment of No Patent Misuse and No Unclean Hands; and (2) Motion for Summary Judgment of No Inequitable Conduct.  (See Dkt. no. 04-1686, entry no. 60 and 61).  Oral argument on Medpointe's motions were heard before Judge Cooper on November 30, 2006, at the same time that argument was heard on the summary judgment motions in Medpointe's case against Hi-Tech.  (See Dkt. no. 04-1686, entry no. 95).  On December 20, 2006, the Court entered an order Dismissing as Withdrawn Plaintiff's motion for summary judgment regarding patent misuse and unclean hands.  (See Dkt. no. 04-1686, entry no. 97).

C.     *Present Motion*

On July 17, 2006, Hi-Tech filed the present motion for a consolidated trial of the actions against Hi-Tech and Morton Grove on liability and to bifurcate trials on damages and alleged willfulness of infringement.  (See Dkt. no. 03-5550, entry no. 104).  The parties requested that the Court defer hearing argument on this motion until after a decision on the summary judgment motions was entered.  Hi-Tech and Morton Grove have each stipulated that the generic copies of Plaintiff's Tussi-12D suspension product infringe the '206 Patent.  (Pl.'s Opp. Br. at 5).  Therefore, the issues remaining for the jury are (1) whether Hi-Tech's or Morton Grove's infringements were willful, (2) whether the patent is valid and enforceable, and (3) whether and in what amount damages are owed to Plaintiff.  Id.

Hi-Tech and Morton Grove argue that the Court should consolidate the two actions on the issue of liability because the facts asserted by the Defendants and the claims asserted against them by Plaintiff are essentially the same in both cases.  Hi-Tech and Morton Grove further argue

4

that the issue of damages and willfulness should be bifurcated and heard after the trial on liability.  Hi-Tech and Morton Grove contend that the issue of inequitable conduct should be resolved by bench trial because this issue is always resolved by bench trial and the defense is only being pursued by Morton Grove.  Plaintiff argues in opposition that a separate trial should be conducted for each Defendant with separate juries because the issues of willfulness and liability cannot be severed.  Plaintiff further argues that it would be substantially prejudiced if the Court grants Defendants' motion.

## II.     DISCUSSION

Hi-Tech and Morton Grove contend that the Court should conduct a single jury trial on obviousness, which is a defense to show invalidity of the patent, because the facts asserted by Hi-Tech and Morton Grove and the claims of the '206 Patent against them are essentially the same in each case.  (Hi-Tech Br. at 6).  Hi-Tech and Morton Grove argue that Plaintiff is expected to employ the same expert witness and use the same evidence and arguments in both cases.  Id.  Hi-Tech and Morton Grove  further argue that the issue of inequitable conduct should be the subject of a separate and subsequent bench trial because this defense is only being pursued by Morton Grove, not Hi-Tech.  Id. at 7.

Hi-Tech and Morton Grove also argue that the issues of damages and willfulness should be bifurcated because (1) there is no significant evidentiary overlap between damages and liability, (2) bifurcation can eliminate the need for a trial on damages and willfulness if no liability is found or if the case settles, (3) bifurcation may avoid prejudice caused by divulgence of sensitive commercial information required in the damages phase, and (4) bifurcation would save the Court's time and decrease expense for the parties.

5

Plaintiff requests that two separate trials be conducted in the Hi-Tech and Morton Grove actions, with all issues in the Hi-Tech action being tried first followed, if necessary, by a separate trial on all of the issues in Morton Grove before a second jury. (Pl.'s Opp. Br. at 2). Plaintiff argues that if Hi-Tech's and Morton Grove's motion is granted, it will be "substantially and irreparably prejudiced once the jurors learn that they would be relieved of any further duties if they render a verdict against MedPointe in the liability phase." Id. at 3. Plaintiff further argues that the issues of willfulness and liability are inextricably intertwined in this case. Id. at 6. Plaintiff also argues that the case does not warrant bifurcation because it is not sufficiently complex and the damages period is short. Id. at 12.

A.      *Federal Rule of Civil Procedure 42(a)*

Federal Rule of Civil Procedure 42(a) governs consolidation and provides, in relevant part:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

FED. R. CIV. P. 42(a). In a motion to consolidate, the party moving for consolidation bears the burden of showing that common questions of law or fact exist. See Schneck v. Int'l. Business Machines Corp., 1996 U.S. Dist. LEXIS 10126, at *3 (D.N.J. June 24, 1996) (cited in Debruyne v. Nat'l. Semiconductor Corp., 11 F.3d 368, 373 (2d Cir. 1993)). Those common issues alone, however, do not warrant consolidation. See Schneck, 1996 U.S. Dist. LEXIS at *3 - 4 (referring to Waste Distillation Tech., Inc. v. Pan American Resources, Inc., 775 F. Supp. 759, 761 (D. Del. 1991)). Rather, courts balance the savings of time and effort against the potential for inconvenience, delays, or cost resulting from the simultaneous disposition of separate actions.

6

See id. at *4 (referring to Rohm & Haas Co. v. Mobil Corp., 525 F. Supp. 1298, 1309 (D. Del. 1981)).

In the present matter, there are common questions of law and fact in Plaintiff's separate actions against Hi-Tech and Morton Grove. In both actions, Plaintiff accuses the Defendant of willful infringement of the '206 Patent and seeks to stop the Defendant from marketing generic copies of the prescription anti-cough medication Tussi-12D. Hi-Tech and Morton Grove have both admitted that if Plaintiff's patent claims are valid, then the patent was infringed. However, both Defendants raise the defense of obviousness. Hi-Tech filed a summary judgment motion on June 13, 2006 and Morton Grove joined that motion. Essentially the same facts and circumstances are involved with both defenses.

Further, Plaintiff is expected to use the same evidence, arguments, and expert witness to rebut the defense of obviousness in both cases. (Hi-Tech Br. at 6). At present, Hi-Tech and Morton Grove are expected to employ different expert witnesses regarding obviousness. Id. However, Defendants will be able to streamline and limit the scope of expert testimony if the two cases are consolidated. Id. Therefore, because of the similarity in facts, circumstances, and law between the two cases and the potential savings of time and expense to the parties, the Court finds that the Hi-Tech and Morton Grove cases should be consolidated for the issue of liability.

**B.     *Federal Rule of Civil Procedure 42(b)***

Federal Rule of Civil Procedure 42(b) governs separate trials and provides, in relevant part:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim . . . or of any separate issue or of any number of claims . . . or issues, always preserving inviolate the right of trial by jury as declared by the Seventh

Amendment to the Constitution or as given by a statute of the United States. FED. R. CIV. P. 42(b).  Under Rule 42(b), "a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management."  Gardco Mfg., Inc. v. Herst Lighting, 820 F.2d 1209, 1212 (Fed. Cir. 1987).  In patent cases, bifurcation of liability and damages is not uncommon, especially when the damages issues are complicated and extensive evidence would be necessary.  See Princeton Biochemicals, Inc. v. Beckman Instruments, Inc., 180 F.R.D. 254, 256-57, 259 (D.N.J. 1997) (citing Amgen, Inc. v. Chugai Pharmaceutical Co. Ltd., 13 U.S.P.Q.2d (BNA) 1737, 1741 (D. Mass. 1989); American Standard Inc. v. Pfizer, Inc., 722 F. Supp. 86, 90 (D. Del. 1989); E.I. Dupont De Nemours & Co. V. Phillips Petroleum Company, 656 F. Supp. 1343, 1346 (D. Del. 1987)).  The United States District Court for the District of Delaware noted that "[i]n the context of patent cases, 'experienced judges use bifurcation and trifurcation both to simplify the issues in patent cases and to maintain manageability of the volume and complexity of the evidence presented to a jury.'"  Ciena Corp. v. Corvis Corp., 210 F.R.D. 519, 521 (D. Del. 2002) (citing Thomas L. Creel & Robert Taylor, Bifurcation, Trifurcation, Opinions of Counsel, Privilege and Prejudice, 424 PLI/Pat 823, 826 (1995)).

In the present matter, the issues of damages and willfulness are most appropriately bifurcated from liability **but** heard by the **same** jury following the liability trial.  Unlike the technological information necessary to prove liability and the related defense of obviousness, financial and economic evidence will be used to prove and defend the issue of damages. Evidence in the liability trial will focus on disclosure and claims of the patent and "the state of the relevant art as represented by prior art products, patents and technical literature."  (Hi-Tech

Br. at 14). Evidence in the damages phase of the litigation, on the other hand, might include the following factors: (1) market demand for relevant products; (2) Plaintiff's marketing and manufacturing capacity; (3) the existence of noninfringing alternative products available through other vendors; (4) the extent to which Plaintiff, as opposed to competitors, would have captured sales of the generic products; and (5) the profits that Plaintiff would have realized on these additional sales. (Hi-Tech Br. at 14-15). The damages evidence itself appears to be relatively complex and comprehensive. For example, one of Plaintiff's damages experts, Raymond Sims, submitted "52 pages of opinions regarding numerous lost profits and reasonable royalty theories" in his opening report. (Hi-Tech Reply Br. at 5).

Further, the facts and circumstances of each Defendant's marketing of its generic product are different. Hi-Tech, which marketed its generic product after the Plaintiff's injunction was vacated, will have a different measure and time period of damages than Morton Grove, which did not market its product as early. Plaintiff also asserted an argument against Morton Grove, not Hi-Tech, which claimed damages for manufacture, not just sale, of the generic product. Similarly, the issue of damages in Hi-Tech's case is further separable from Morton Grove's in that if Plaintiff loses on the liability issue, Hi-Tech intends to seek damages for lost profits from the bond posted by Plaintiff when the preliminary injunction was entered. (Hi-Tech Br. at 5). Morton Grove has indicated no such intent. Therefore, the damages issue is separable between Defendants and properly bifurcated.

Although, as Plaintiff asserts, there will be some overlap between evidence and witnesses, as well as some commercial issues in both a trial for liability and one for damages, this duplication does not appear to substantially prejudice Plaintiff. Hi-Tech's witness list for the

9

liability issue includes sixteen witnesses, two of whom will also testify regarding willfulness and two of whom will further testify regarding damages.  Similarly, Morton Grove intends to call ten witnesses for liability.  One will be recalled for willfulness and two will be recalled for damages.  Finally, Plaintiff intends to call thirteen witnesses for liability, three of whom will also testify regarding willfulness and six of whom will testify regarding damages.  (Pl.'s Opp. Br. at 10).  Plaintiff also intends to call at least two witnesses who will testify solely on the damages issue.  (Hi-Tech Reply Br. at 5).  Although there will be some overlap in evidence and witnesses, this is the situation with any bifurcated trial.  Also, once liability is determined, the damages issue may become moot or the case may settle without the need for any evidence or witness testimony on this issue.

Additionally, the issue of willfulness, which impacts the amount of damages and the potential award of attorneys' fees, requires inquiry into each Defendant's state of mind.  This analysis will necessarily be different for each Defendant.  Therefore, based on the apparent complexity of the damages issue in this matter, the relatively minor degree to which Plaintiff will be prejudiced by the overlap in evidence and witnesses, the difference in damages theories against each Defendant, and the difference in the facts and circumstances surrounding willfulness of each Defendant, the Court finds that bifurcation of the damages and willfulness issues would best serve judicial economy and minimize juror confusion.

C.      *Inequitable conduct*

In a patent action, the defense of inequitable conduct, "being entirely equitable in nature, is not an issue for a jury to decide."  Paragon Podiatry Lab., Inc. v. KLM Labs., Inc., 984 F.2d 1182, 1190 (Fed. Cir. 1993); see also Ethicon, Inc. v. United States Surgical Corp., 921 F. Supp.

901, 903 (D. Conn. 1995) (noting that the issues "presented by a defense of inequitable conduct are equitable in nature and, as such, triable without a jury"). Therefore, the issue of inequitable conduct can be tried separately by bench trial. See Gardco, 820 F.2d at 1212-213 (hearing the issue of equitable conduct before the jury trial); Elkhart Brass Mfg. Co. v. Task Force Tips, Inc., 867 F. Supp. 782, 786 (N.D. Ind. 1994).

In the present case, both Hi-Tech and Morton Grove initially pleaded the defense of inequitable conduct. Morton Grove pursued this defense in discovery and intends to raise it at trial. However, Hi-Tech did not pursue this defense in discovery and does not intend to raise it at trial. Unlike in Gardco, where the court heard the inequitable conduct issue prior to the jury trial, in the present matter, the inequitable conduct issue is better heard following the trial on liability. Depending on how the liability issue is decided, the defense of inequitable conduct may become moot either through settlement or through the Plaintiff losing its case. Further, as explained in Gardco and Paragon Podiatry, the inequitable conduct defense is best heard without a jury. Therefore, the Court finds that the inequitable conduct is best heard by bench trial, following the trial on liability and the separate trials on damages and willfulness.

## III. CONCLUSION

For the reasons expressed here, the Court finds that Plaintiff's two patent infringement actions, one against Hi-Tech and the other against Morton Grove, are appropriate for consolidation on the issue of liability because they involve common issues of law and fact. Also, the use of expert witnesses by Defendants can be streamlined upon consolidation to save time and expense. The Court further finds that the issues of damages and willfulness are properly bifurcated because they are relatively complex and involve distinct facts and circumstances and

because bifurcation will not unduly prejudice Plaintiff.  The Court also finds that the issue of inequitable conduct shall be heard by bench trial following the trials on liability and damages.

Therefore, the Court holds that the case shall proceed as follows: (1) a consolidated trial on liability; (2) if necessary, a separate trial with Defendant Hi-Tech on damages with the same jury as that hearing the liability trial; (3) if necessary, a separate trial with Defendant Morton Grove on damages with the same jury as that hearing the liability trial and the Hi-Tech damages trial; and (4) if necessary, a bench trial on inequitable conduct involving Defendant Morton Grove.

An appropriate Order accompanies this Memorandum Opinion

**Dated: January 22, 2007.**